IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| YOLANDA S. HOLDEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-2783 |
| | § | |
| ILLINOIS TOOL WORKS, INC. and | § | |
| VALERON STRENGTH FILMS CO., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is the second employment discrimination lawsuit filed by Yolanda Holden against Illinois Tool Works, Inc. ("ITW") and Valeron Strength Films Co. ("Valeron"). In 2006, Holden sued ITW and Valeron in federal court, alleging sex discrimination, sexual harassment, and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. During that lawsuit, ITW informed Holden on several occasions, in its discovery responses and in motions, that Valeron was not a legal entity capable of being sued or served. On November 30, 2007, Holden agreed to dismiss Valeron as a defendant. An agreed motion to dismiss the claims against Valeron was filed on December 6, 2007 and Holden pursued her claims against ITW. After this court denied ITW's motion for summary judgment, Holden's sex discrimination, sexual harassment, and retaliation claims against ITW were tried before a jury from March 3 to March 6, 2008. The jury found in favor of ITW on March 7, 2008 and final judgment was entered on March 24, 2008.

ITW terminated Holden's employment while the first lawsuit was pending. On February 9, 2008, ITW had discovered that Holden had been secretly tape-recording conversations with her coworkers and supervisors during the previous two years, in violation of ITW policy. ITW

conducted an investigation and fired Holden on February 19, 2008. The pending lawsuit did not include any claim arising from the termination.

On August 25, 2008, Holden sued both ITW and Valeron in Texas state court, alleging sex discrimination and retaliation in violation of Texas law. ITW filed a Notice of Removal on September 11, 2008, asserting diversity jurisdiction under 28 U.S.C. § 1332 and urging that the Texas citizenship of Valeron should be disregarded because it is not a legal entity capable of being sued. The Notice of Removal stated that Valeron was fraudulently joined to defeat diversity jurisdiction. This court denied Holden's motion to remand, finding that Valeron, the only nondiverse defendant, is not a legal entity capable of being sued or served with process. (Docket Entry No. 13).

ITW has moved for sanctions against Holden and her attorney for suing Valeron and seeking to remand on the basis that Valeron's presence destroyed diversity. (Docket Entry No. 14). ITW argues that naming Valeron as a defendant was in bad faith. ITW asks this court to dismiss Holden's suit and to order Holden and her counsel to reimburse ITW for the costs and fees incurred in defending this case. Holden responded to the motion for sanctions, (Docket Entry No. 17), and ITW replied, (Docket Entry No. 18).

ITW has also moved for summary judgment on the basis that Holden's state-law claims of sex discrimination, hostile work environment, and retaliation are barred by *res judicata* and that Holden has failed to establish a *prima facie* case of discriminatory or retaliatory discharge. (Docket Entry No. 12). Holden responded, asserting that summary judgment is premature because no discovery has occurred in this suit, (Docket Entry No. 16), and ITW replied, (Docket Entry No. 19).

Based on a careful review of the pleadings; the motions, responses, and replies; the record; and the applicable law, this court grants ITW's motion for sanctions limited to its reasonable attorneys' fees in responding to the claims against Valeron in state court and in removing the case to federal court, but denies the motion insofar as ITW seeks all fees or dismissal. This court grants ITW's motion for summary judgment on the state-law sex discrimination, hostile work environment, and retaliation claims and denies as prematurely filed ITW's motion for summary judgment on the discriminatory and retaliatory discharge claims. This ruling is without prejudice to ITW seeking summary judgment on the discharge claims if appropriate after an opportunity for discovery on those claims.

The reasons for these rulings are explained in detail below.

**I.     Background**

ITW is an industrial manufacturer that makes numerous products, including plastic and industrial packaging, power systems and electronics, construction products and components, and adhesives, sealants, and lubricants. Holden began working for ITW in August 2002 as a machinist in Houston, Texas. When hired, she was the only female in her department.

Valeron was formed as a Texas limited partnership on December 23, 1996. (Docket Entry No. 14, Ex. D). Valeron was a division of ITW. The certificate of limited partnership for "Valeron Strength Films, L.P." was cancelled as of December 31, 2002. (*Id.*, Ex. C). No other business or partnership filings have been made with the Texas Secretary of State using the name "Valeron Strength Films."

Holden's first lawsuit against ITW and Valeron was filed in September 2006. On October 25, 2007, after the discovery deadline had passed, Holden's counsel sent a letter to ITW's counsel

3

stating:

> Please be advised that we have in our possession approximately 18 tapes of conversations between our client and other employees of Defendant that we plan to use at trial. Please contact us if you would like to inspect and copy the tapes.

(Docket Entry No. 12, Ex. E). After obtaining the tapes, ITW determined that they contained eleven hours of conversations recorded by Holden on ITW's premises. This court allowed ITW to reopen Holden's deposition for questioning about the tape recordings.

ITW deposed Holden for a second time on February 8, 2008. During the deposition, Holden revealed that she had been surreptitiously recording conversations with coworkers and supervisors during the previous two years. (Docket Entry No. 12, Ex. F, Deposition of Yolanda Holden, at 10:1–10). Holden testified that she made the tape-recordings "[f]or reference" because coworkers and supervisors "would tell [her] one thing and then say they didn't." (*Id.*, at 10:11–17). Holden admitted that she did not have the consent of these individuals to tape-record their conversations. (*Id.*, at 10:7–10; 12:9–13:16). Holden asserted that three other employees—Curtis Holden, Therold Palmer, and Reginald Ferguson—also made secret recordings while at work. (*Id.*, at 86:14–87:9; 87:17–21).

ITW's "Personal Electronic Device Usage Policy" states that "tape recording will not be permitted unless mutually agreed upon by all parties involved." (Docket Entry No. 12, Ex. C). After Holden's second deposition, ITW notified her on February 11, 2008 that it was "investigating this matter to determine whether [she] violated company policy when making such recordings and, if so, what type of corrective action the company will take for any such violation(s)." (Docket Entry No. 12, Ex. G). ITW investigated and determined that Holden had violated the "Personal Electronic Device Usage Policy" by tape recording coworkers and supervisors without their consent. Based

4

on this violation, ITW terminated Holden's employment on February 19, 2008. (Docket Entry No. 12, Ex. I).

Holden filed the present suit against ITW and Valeron in Texas state court on August 25, 2008. She is represented by the same counsel who represented her in the previous federal lawsuit. In her petition, Holden asserted several claims under Texas law. *See* TEX. LAB. CODE § 21.051. Holden alleged that she was subjected to sexual harassment and a hostile work environment that included sexually derogatory comments, unwanted physical contact, humiliation, and differential treatment. She alleged that she was denied opportunities for advancement in pay, position, and other employment opportunities because of her sex. She alleged that she received less pay than similarly situated male counterparts at ITW. Finally, she asserted that she was fired in retaliation for her complaints about these practices.

Holden alleged that Valeron is a company doing business in Texas and could be served through its registered agent at 350 N. Paul Street, Dallas, TX 75201. This is ITW's address and the location of its registered agent. ITW removed on September 11, 2008 on the basis of diversity jurisdiction, asserting that Valeron, the only nondiverse defendant, was improperly joined. This court denied Holden's motion to remand, finding that ITW met the standard for improper joinder. ITW's motion for sanctions and motion for summary judgment followed.

**II.      The Motion for Sanctions**

    **A.      The Legal Standard**

In cases filed originally in Texas state court but later removed to federal court, groundless pleadings are governed by Rule 13 of the Texas Civil Rules of Civil Procedure. *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000) (applying Texas Rule of Civil Procedure 13, not Federal Rule of

Civil Procedure 11, to determine whether plaintiff's allegedly frivolous claims warranted the imposition of sanctions). "The federal rules do not apply to filings in state court, even if the case is later removed to federal court." *Id.* The Federal Rules of Civil Procedure, however, do "apply to a civil action *after* it is removed from state court." FED. R. CIV. P. 81(c) (emphasis added). Whether sanctions are appropriate for filings made in federal court after removal is determined by Rule 11 of the Federal Rules of Civil Procedure. *See Edwards v. General Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998) (holding that Rule 11 sanctions in a case removed from state to federal court "are proper only insofar as they are based on post-removal filings"). Rule 11, however, "does not impart a continuing duty, but requires only that each filing comply with its terms as of the time the paper is signed." *Id.* A party "cannot be sanctioned simply for her failure to withdraw pleadings filed in state court that would have violated rule 11 had they been filed in federal court." *Id.*

Rule 13 of the Texas Rules of Civil Procedure grants courts the discretionary power to impose sanctions, after notice and hearing, on parties who, in their pleading, motion, or other paper, make statements that "they know to be groundless and false, for the purpose of securing a delay of the trial of the cause." TEX. R. CIV. P. 13. The purpose of Rule 13 is to prevent abuses in pleadings. *Karlock v. Schattman* 894 S.W.2d 517, 552 (Tex. App.–Ft. Worth, 1995, orig. proceeding, no writ); *New York Underwriters Ins. Co. v. State Far Mut. Auto. Ins. Co.* 856 S.W.2d 194, 205 (Tex. App.-Dallas, 1993, no writ). Courts may impose sanctions under Rule 13 against a pleading that is both groundless and brought in bad faith, or groundless and brought to harass the opposing party. *McCain* v. *NME Hospitals*, Inc. 856 S.W.2d 751, 757 (Tex. App.–Dallas 1993, no writ); *Emmons v. Purser*, 973 S.W.2d 696, 757 (Tex. App.–Austin,1998, no pet.). Sanctions may also be imposed under Rule 13 for a party's or counsel's failure to make a reasonable inquiry into the facts when put on notice that

they may be incorrect. *Monroe v. Grider* 884 S.W.2d 811, 819 (Tex. App.–Dallas, 1994, writ denied); *Bloom v. Graham,* 825 S.W.2d 244, 248 (Tex. App.-Fort Worth 1992, writ denied); *P.N.L. v. Owens,* 799 S.W.2d 439, 441 (Tex.App.–El Paso 1990, no writ) (imposing Rule 13 sanctions after the plaintiff continued his suit despite notice that he had sued the wrong defendant). Courts should presume that parties and their counsel file all "papers in good faith, and the party seeking sanctions must overcome that presumption." *Emmons* 973 S.W.2d at 700; TEX. R. CIV. P. 13; *GTE Communications Sys. Corp. v. Tanner,* 856 S.W.2d 725, 731 (Tex. 1993). To determine if Rule 13 sanctions are proper, the court must examine the circumstances existing when the pleading is filed and ignore the merits of the legal claim. *Home Owners Funding Corp. v. Scheppler,* 815 S.W.2d 884, 887-89 (Tex.App.–Corpus Christi 1991, no writ); *Emmons* 973 S.W.2d at 700.

A similar standard governs filings made in federal court. Rule 11 of the Federal Rules of Civil Procedure generally requires an attorney to conduct a reasonable inquiry into the relevant law and facts before signing pleadings, written motions, or other documents, and it prescribes sanctions for violating these obligations. FED. R. CIV. P. 11. Rule 11 "prohibits filings made with 'any improper purpose,' the offering of 'frivolous' arguments, and the assertion of factual allegations without 'evidentiary support' or the 'likely' prospect of such support." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005). Rule 11(c)(2) requires that a party seeking sanctions must serve the Rule 11 motion on the opposing party and may not file the motion with the district court unless the offending filing is not withdrawn or corrected within 21 days after service. FED. R. CIV. P. 11(c)(2). The record does not show that ITW complied with the procedural requirements for seeking sanctions under Rule 11. ITW served Holden with the motion for sanctions on the same day it was filed, December 12, 2008.

The motion for sanctions is addressed to Holden's inclusion of Valeron as a defendant in the suit when it was filed in state court. The motion is governed by Rule 13 of the Texas Rules of Civil Procedure.

**B.     Analysis**

ITW argues that Holden's suit against Valeron was groundless and made in bad faith because Holden's counsel failed to conduct a reasonable investigation before filing the suit. Holden's counsel responds that suing Valeron as well as ITW was proper because Valeron was "the entity that hired Plaintiff and the only entity that Plaintiff knew she worked for throughout her entire employment with the company." (Docket Entry No. 17, at 2).

Holden's explanation is not persuasive. The record shows that the Certificate of Limited Partnership for "Valeron Strength Films L.P." was cancelled on December 31, 2002. No filings have been made with the Texas Secretary of State under the name "Valeron Strength Films" since 2002. Holden's W-2 records list "Illinois Tool Works" as her employer. (Docket Entry No. 9, Ex. D). The record makes it clear that Holden and her counsel had the information that Valeron had no legal existence after 2002 and was not a legal entity capable of being sued. In 2007, during the first lawsuit against these same defendants, Holden's counsel agreed to dismiss Valeron as a defendant because it was not a legal entity that could be sued and was not separate from ITW, Holden's employer. Holden's counsel asserts that he agreed to dismiss Valeron only because ITW agreed that it "would be solely responsible for any and all damages." (Docket Entry No. 17, at 2). The record does not support this assertion. The agreed stipulation of dismissal signed by Holden's counsel does not mention damages. The stipulation instead states that Valeron will be dismissed because it is not a legal entity separate from ITW.

The letter from the defendants' lawyers asking Holden's lawyer to agree to dismiss Valeron from the suit makes no mention of an agreement by ITW, the remaining defendant, to be responsible for any damages that might be awarded. Instead, the letter stated that Valeron was not a separate entity. The defendants had provided the same information in the answer to the complaint, in discovery responses, and in the motion for summary judgment. After receiving these explanations of Valeron's status, Holden's counsel signed a letter agreement to dismiss Valeron. The letter was labeled, "Agreed to drop and/or dismiss Valeron Strength Films Company as a Defendant in the above-referenced case." (Docket Entry No. 14, Ex. A). The record supports a conclusion that at a minimum, Holden's counsel failed to conduct a reasonable inquiry into the legal status of Valeron before filing this suit in Texas state court. The record shows that when counsel for Holden filed this suit in state court, he knew that Valeron was not a separate legal entity capable of being sued. Sanctions are warranted.

The sanction of dismissal with prejudice is not, however, appropriate. Dismissal is a "death-penalty sanction" – a sanction that adjudicates the underlying dispute on the merits – and is rarely granted. *See Williams v. Akzo Nobel Chemicals, Inc*. 999 S.W.2d 836, 846 *(*Tex. App.–Tyler, 1999, no pet.) (finding that lesser sanctions should be used before applying determinative sanctions); *GTE*, 856 S.W.2d at 731 ("[C]ase determinative sanctions may not be imposed under. . . rule [13] unless the violation warrants adjudication of the merits."); *TransAmerican Natural Gas Corp. v. Powell* 811 S.W.2d 913, 917 (Tex. 1991) (warning against excessive sanctions). Holden and her counsel must reimburse ITW for the attorney's fees reasonably incurred in responding to the claims against Valeron in state court and in removing the case to federal court.

**III.	The Motion for Summary Judgment**

    **A.	The Legal Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not

be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B. Analysis

#### 1. Preclusion

In the state-court petition, Holden alleged that she was subjected to sexual harassment and a sexually hostile work environment that included sexually derogatory comments, unwanted physical contact, humiliation, and differential treatment. She asserted that she was denied opportunities for advancement in pay, position, and other employment opportunities because of her sex. Holden also alleged she received less pay than similarly situated male counterparts at ITW. Holden alleged that ITW retaliated against her for complaining about these practices. Holden asserted state-law causes of action for discrimination and retaliation. ITW argues that all of Holden's state-law claims, except for the claims arising from her discharge, are barred by preclusion because these claims were litigated in the first lawsuit.

A federal court sitting in diversity must determine the preclusive effect of a federal judgment according to the preclusion laws of the state in which the original court sat. *Semtek Intern. Inc. v. Lockheed Martin Corp.* 531 U.S. 497 (2001). *Res judicata*, or claim preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996); *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir.

11

2007) (quoting *Amstadt*, 919 S.W.2d at 652)). Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Savings*, 837 S.W.2d 627, 628 (Tex. 1992).

The present lawsuit includes Holden's discriminatory and retaliatory discharge claims — claims that were not and could not have been raised in the first lawsuit. ITW's argument that Holden's sex discrimination, hostile work environment, and retaliation claims are barred is based on issue preclusion or collateral estoppel. Under Texas law, "[a] party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *John G. & Marie Stella Kenedy Mem. Found. v. Dewhurst*, 90 S.W.3d 268, 288 (Tex. 2002).

Holden's first lawsuit against ITW alleged sex discrimination, sexual harassment, and retaliation in her employment – not including her job termination – in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The case was tried before a jury, which found in favor of ITW on all claims. This court entered final judgment on March 24, 2008. In this second lawsuit, Holden alleges that ITW violated Texas Labor Code § 21.051 through sex discrimination, a hostile work environment, retaliation, retaliatory discharge, and wrongful discharge. (Docket Entry No. 1, at ¶¶ 20–23). ITW argues that the sex discrimination, hostile work environment, and retaliation claims were adjudicated in the first lawsuit. Holden responds that her "claims of discriminatory discharge based on her sex and retaliation for prosecuting her sex discrimination lawsuit have not been previously litigated." (Docket Entry No. 16, at 3). But ITW is not seeking to preclude Holden from pursuing her claim that her job termination was discriminatory and retaliatory.

Holden was still employed at ITW when she filed her first lawsuit and was not fired for another year. This court refused to allow Holden to assert the wrongful termination claim in the first suit. It is not subject to the preclusion argument ITW raises.

Holden's claims of sex discrimination, hostile work environment, and retaliation during her employment at ITW satisfy the elements of issue preclusion. The parties in both suits are identical and were adversaries in the first action. The factual basis of these claims was fully and fairly litigated in the previous lawsuit. The statement of facts in Holden's state-court petition is nearly identical to her previous federal-court complaint under Title VII. The jury's finding that ITW was not liable for discrimination, a hostile work environment, or retaliation during Holden's employment at ITW was essential to the final judgment entered in the first lawsuit. Although Holden's new claims are brought under state law, Texas Labor Code § 21.051 is the "state equivalent" of Title VII. It is "[p]atterned after Title VII of the federal Civil Rights Act" and state courts look to Title VII precedent in adjudicating § 21.051 claims. *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 474 (Tex. 2001). Holden's claims of sex discrimination, hostile work environment, and retaliation are barred by collateral estoppel. Summary judgment is granted on these claims.

**2.      The Discriminatory Discharge and Retaliatory Discharge Claims**

Holden alleges that ITW terminated her employment on February 19, 2008 – while the first lawsuit was pending – based on sex discrimination and retaliation for filing the first lawsuit in 2006. Holden sues under Section 21.051 of the Texas Labor Code. The purpose of Chapter 21 of the Texas Labor Code was to "provide for the execution of policies of Title VII of the Civil Rights Act of 1964." TEX. LAB. CODE § 21.001(1); *see also Quantum*, 47 S.W.3d at 476. The language of Section 21.051 is nearly identical to the language of Title VII. It states that "[a]n employer commits an

13

unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LAB. CODE § 21.051. "'[A]nalogous federal statutes and the cases interpreting them guide' the reading of the statute." *Pineda v. United Parcel Serv., Inc.,* 360 F.3d 483, 487 (5th Cir. 2004) (quoting *Quantum*, 47 S.W.3d at 476).

Discriminatory discharge and retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *McCoy v. City of Shreveport,* 492 F.3d 551, 556-57 (5th Cir. 2007). To prove discriminatory discharge, a plaintiff must establish that she: 1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class" or "that others similarly situated were treated more favorably." *Okoye v. University of Texas Houston Health Science Center* 245 F.3d 507, 513 (5th Cir. 2001). To make a *prima facie* showing of retaliation, the plaintiff must show that: (1) the plaintiff engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *McCoy,* 492 F.3d at 556-57. Under the *McDonnell Douglas* burden-shifting framework, if a plaintiff makes a *prima facie* showing of discriminatory discharge or of retaliation, the burden shifts to the defendant to proffer a legitimate rationale for the underlying employment action. If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for discrimination or retaliation. In a mixed-motive case, if the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision

14

would have been made regardless of discriminatory animus. *Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004). The plaintiff has the ultimate burden of showing a genuine issue of material fact on whether the defendant discriminated on the basis of the plaintiff's membership in the protected class. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

ITW argues that Holden has failed to make a *prima facie* showing of discriminatory discharge because there is no evidence that similarly situated employees were treated more favorably. ITW asserts that the three other employees who allegedly tape-recorded conversations are not similarly situated to Holden. Two of those employees, Palmer and Ferguson, no longer worked at ITW in February 2008 when Holden asserted that they had secretly been making tape-recordings. The other, Curtis Holden, denied Yolanda Holden's claims that he had tape-recorded conversations at work and ITW had no other evidence to verify those claims. In contrast, Yolanda Holden was still employed at ITW when it was revealed that she had made secret tape-recordings and ITW had substantial evidence of Holden's violation of company policy, including her admission and the content of the tapes.

ITW also argues that Holden cannot make a *prima facie* showing of retaliatory discharge because there is no causal link between the first lawsuit, filed in September 2006, and Holden's termination in February 2008. ITW contends that even assuming Holden has established a *prima facie* showing of discriminatory or retaliatory discharge, the stated reason for Holden's termination – violation of company policy – is a legitimate nondiscriminatory reason for the termination and Holden has not raise a fact issue as to whether it was a pretext for discrimination or retaliation.

Holden responds that the motion for summary judgment on these claims is premature because the parties did not engage in any discovery before ITW filed its motion. Holden asks for a

15

continuance to conduct discovery under Rule 56(f) of the Federal Rules of Civil Procedure. She asserts that she has not gathered evidence to oppose a summary judgment motion because no discovery has occurred and proof of discriminatory discharge and retaliation is in ITW's exclusive possession and control. Holden seeks discovery as to "evidence rebutting each of the nondiscriminatory reasons the employer articulates." (Docket Entry No. 16, at 4). Holden asserts that "such discovery would raise a genuine issue of material fact" for her discriminatory discharge and retaliatory discharge claims. (*Id.*). ITW responds that Holden has failed to make the specific showing required by Rule 56(f) as to the discovery she seeks and how that discovery would raise a genuine issue of fact precluding summary judgment. ITW also argues that Holden's request is defective because she has not submitted an affidavit.

Generally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Alabama Farm Bureau Mutual Cas. Co., Inc. v. American Fidelity Life Ins. Co.*, 606 F.2d 602, 609 (5th Cir. 1979); *Farmer v. Brennan,* 81 F.3d 1444, 1450–51 (7th Cir. 1996). "Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (vacating summary judgment where plaintiff "was denied the opportunity to conduct discovery of any sort" and thus "did not have a chance to adduce evidence to support his claim").

Rule 56(f) authorizes a district court to order a continuance to permit additional discovery if the nonmovant shows that she "cannot for reasons stated present by affidavit facts necessary to justify the party's opposition." *Adams v. Travelers Indem. Co. of Conn.,* 465 F.3d 156, 162 (5th

16

Cir.2006) (citing *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 919 (5th Cir.1992)). In requesting additional time for discovery under Rule 56(f), the nonmoving party must show why additional discovery is necessary. *Id.* (citing *Beattie v. Madison County School Dist.,* 254 F.3d 595, 605 (5th Cir. 2001)). The nonmoving party may not "simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Id.* (citing *Brown v. Miss. Valley State Univ.,* 311 F.3d 328, 333 n. 5 (5th Cir.2002)). If no discovery has yet taken place, "the party making the Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not been laid." *Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003). The Fifth Circuit has held it to be an abuse of discretion not to grant a Rule 56(f) motion if the discovery opportunity has clearly been inadequate. *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 355 (5th Cir. 1989).

When a party files a brief opposing the motion for summary judgment and informs the court of the need for additional discovery, these documents can serve "as the functional equivalent" of a Rule 56(f) motion and affidavit. *See Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992) ("Although it is preferred that non-movants present an affidavit to support a continuance of discovery, there is no stringent procedure that will bar litigants access to further discovery. In order to trigger the rule non-movants need only submit an 'equivalent statement preferably in writing' that conveys the need for additional discovery.") (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). An affidavit is not necessary "where the circumstances are such that 'the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery and when fact-intensive issues, such as intent, are involved,' provided that 'the

nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary.'" *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)). Holden's Rule 56(f) motion is not deficient because she failed to submit an affidavit.

Although Holden does not identify the discovery she needs with specificity, she has not had an opportunity to conduct discovery on the discriminatory and retaliatory discharge claims. Holden was fired after the discovery period ended in the first lawsuit. She asserts that the information and evidence she seeks, "evidence rebutting each of the nondiscriminatory reasons the employer articulates," is in ITW's exclusive possession. Courts have denied motions for summary judgment as premature when there has been no opportunity for discovery and the information needed to respond to the motion is within the exclusive possession or control of the moving party. *See*, *e.g.*, *Thompson v. Sysco Corp.*, 2008 WL 65582, at *4 (M.D. La. Jan. 4, 2008) (denying summary judgment without prejudice to refile after discovery when the plaintiff alleged a single business enterprise theory and sought discovery as to the business structure of the defendants). Although Holden obtained discovery during the first lawsuit into her claims of discrimination and retaliation during her employment at ITW, there has been no discovery as to her discharge claims. The record includes a letter informing Holden that she would be investigated for a violation of company policy, as well as the February 19, 2008 letter terminating Holden's employment for that violation. But the record does not contain information about or created in the investigation and Holden has not had the opportunity to depose the individuals who conducted the investigation and decided to terminate her employment. She should be afforded the opportunity to conduct that discovery before this court rules on the summary judgment motion. *See Culwell v. City of Fort Worth,* 468 F.3d 868, 873–874 (5th

Cir. 2006) (finding that information about employment is generally within the exclusive possession of an employer); *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 846 (3d Cir. 1992) ("[W]here the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course."); *Walters v. City of Ocean Springs* 626 F.2d 1317, 1322 (5th Cir. 1980) ("The parties' comparative access to the witnesses or material relevant to the disposition of the Rule 56(f) motion is a particularly salient factor the trial court to consider in exercising its discretion."); *Schoenbaum v. Firstbrook*, 405 F.2d 215, 218 (5th Cir. 1968) ("Since the facts in such a case are exclusively in the possession of the defendants, summary judgment should not ordinarily be granted where the facts alleged by the plaintiff provide a ground for recovery, at least not without allowing discovery in order to provide plaintiff the possibility of counteracting the effect of defendants' affidavits.").

ITW's motion for summary judgment on Holden's discriminatory and retaliatory discharge claims is denied without prejudice to refiling the motion, if appropriate, in light of the information disclosed in discovery.

**IV.     Conclusion**

ITW's motion for summary judgment is granted as to Holden's state-law claims for sex discrimination, hostile work environment, and retaliation, which are barred by preclusion. The motion for summary judgment is premature as to the discriminatory and retaliatory discharge claims and is denied without prejudice to refiling after discovery. The motion for sanctions is granted as to attorney's fees reasonably incurred in responding to the claims against Valeron in state court and in

removing the case, but denied to the extent it seeks fees incurred after removal or dismissal of the complaint. ITW may submit its fees with supporting documentation no later than July 24, 2009.

SIGNED on July 8, 2009, at Houston, Texas.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　Lee H. Rosenthal
　　　　　　　　　　　　　　　　　　　　　　United States District Judge